In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1155

SCOTT ALLIN,

*Plaintiff-Appellee,*

*v.*

CITY OF SPRINGFIELD, *et al.,*

*Defendants-Appellants.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:14-cv-03013-CSB-EIL — **Colin S. Bruce**, *Judge.*

ARGUED OCTOBER 27, 2016 — DECIDED JANUARY 11, 2017

Before WOOD, *Chief Judge,* and BAUER and MANION, *Circuit Judges.*

BAUER, *Circuit Judge.* Plaintiff-appellee, Scott Allin, brought this action against Patricia Baskett, Sergeant Jeff Barr of the Springfield Police Department, and the City of Springfield, Illinois, raising both 42 U.S.C. § 1983 and state law claims.

Allin asserts that his Fourth Amendment rights were violated when Baskett, with Barr in attendance, came to his residence to gather her property, and, after a dispute about the ownership of a motorcycle, Barr announced he would not prevent her from taking it. Barr filed a motion for summary judgment on Allin's § 1983 claims, contending that he was entitled to qualified immunity. The district court denied his motion. We reverse and remand.

## I.  BACKGROUND

Allin and Baskett lived together in Allin's residence from December 2010 until February 2012. In late July or early August 2011, Allin was in poor health and signed over the titles to the numerous vehicles that he owned, including a 2001 FLSTS Harley Davidson motorcycle, believing it "would make it easier for his survivors if he passed away."

On August 29, 2011, the Illinois Secretary of State issued a change of ownership on the motorcycle and a certificate of title in Baskett's name.

By February 25, 2012, Allin and Baskett's relationship had soured. They had an argument and Baskett moved in with her sister, Kelly McClure. Baskett asked Allin for $1,000 to help her find her own place, but Allin refused. Following this argument, he discovered that the certificate of title to his motorcycle was missing. He filed a theft report with the Springfield Police Department, alleging that Baskett had stolen the title.

Sometime between February 25 and February 27, Baskett told McClure that she was concerned about retrieving her personal belongings from Allin's residence; McClure contacted

Ami Barr—Sergeant Barr's wife and McClure's coworker—about Baskett's fears. Ami knew Baskett, having met her on a few occasions. Ami asked Barr if he would accompany Baskett to Allin's residence when Baskett went to remove her belongings. Barr told Ami that he would.

On February 27, 2012, Baskett and others arrived at Allin's residence to gather her personal property; Springfield police officers, including Barr, were there to ensure a peaceful transition of the property. At the residence, Allin and Baskett had a dispute as to the ownership of the motorcycle, and decided to present their conflicting stories to Barr. Baskett produced the certificate of title for the motorcycle and claimed that Allin gave her the motorcycle for taking care of him when he was sick. Allin admitted that he signed over the title, but he stated that he did not intend for ownership to pass to Baskett. Allin also said that he reported the certificate of title stolen two days earlier.

The police ran a title search; it is the Springfield Police Department's policy to run title searches and rely upon the results when responding to a removal of property call. The search showed that title to the motorcycle had been in Baskett's name since August 29, 2011.

The officers also conducted a computer search of the reported theft records; the results did not indicate that the motorcycle was reported stolen.

Barr also claims to have sought advice from a superior, but Allin disputes this; Barr's call records failed to show that a call took place around that time. In light of the situation, Barr

announced that he would not prevent Baskett from taking the motorcycle.

Barr left Allin's residence at 2:51 p.m. At approximately 7:00 or 8:00 p.m., Baskett removed the motorcycle from Allin's residence—officers were not present.

At some point after February 27, 2012, Baskett went to Halls Harley Davidson in Springfield to obtain keys to the motorcycle. Later, Barr, Ami, McClure, and Baskett met at a storage unit where the motorcycle had been stored; however, the keys would not start the motorcycle due to a security system problem. Some time later, Springfield police officers and Baskett met at Halls, and Baskett provided a Halls' employee with a copy of the title. The Halls' employee then fixed the motorcycle's security system.

The motorcycle was now operational, allowing Barr to take the motorcycle for a test drive. Following the test drive, Barr agreed to buy the motorcycle from Baskett for $7,000, and on March 13, 2012, the sale was complete.

On January 15, 2014, Allin filed suit against the City of Springfield, Barr, and Baskett, raising both 42 U.S.C. § 1983 and state law claims. Allin's claims allege an unreasonable seizure of property, civil conspiracy, violation of substantive due process, and violation of procedural due process.[1]

On July 31, 2015, each Defendant filed a motion for summary judgment. The district court denied the motions, and

---

[1] Out of the four claims Allin brought under 42 U.S.C. § 1983, the district court addressed only the unreasonable seizure of property and civil conspiracy claims.

held that Barr was not entitled to qualified immunity. Barr and the City of Springfield have appealed.[2]

## II.  DISCUSSION

### A.  Standard of Review

We review *de novo* a district court's denial of summary judgment on qualified immunity grounds. *Leaf v. Shelnutt*, 400 F.3d 1070, 1077 (7th Cir. 2005). Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the factual record and draw all inferences in the light most favorable to the nonmoving party. *Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013).

### B.  Qualified Immunity

#### 1.  Jurisdiction

We have interlocutory jurisdiction over a district court's denial of summary judgment on qualified immunity grounds. *Gibbs v. Lomas*, 755 F.3d 529, 535 (7th Cir. 2014). We consider such appeals to the extent that the defendant public official presents an "abstract issue of law," *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996), such as "whether the right at issue is clearly established or whether the district court correctly decided a question of law," *Huff v. Reichert*, 744 F.3d 999, 1004 (7th Cir. 2014) (citing *Leaf*, 400 F.3d at 1078).

---

[2]  We previously asked the parties to address the issue of this Court's jurisdiction over the City of Springfield's interlocutory appeal. We need not address this issue because it is now moot.

### 2. Qualified Immunity Framework

The doctrine of qualified immunity shields public officials from civil liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When examining a qualified immunity claim, we consider two questions: "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Gibbs*, 755 F.3d at 537 (quoting *Williams v. City of Chicago*, 733 F.3d 749, 758 (7th Cir. 2013)).

"A right is clearly established if it is sufficiently clear that any reasonable official would understand that his or her actions violate that right, meaning that existing precedent must have placed the statutory or constitutional question beyond debate." *Zimmerman v. Doran*, 807 F.3d 178, 182 (7th Cir. 2015) (citing *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The Supreme Court has repeatedly advised courts "not to define clearly established law at a high level of generality." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).

> The dispositive question is "whether the violative nature of *particular* conduct is clearly established." … This inquiry "'must be undertaken in light of the specific context of the case, not as a broad general

> proposition.'" … Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine … will apply to the factual situation the officer confronts."

*Id*. (citations omitted).

Allin contends that the "case law establishes that the constitutional right at stake here is clearly established." Appellee's Br. at 13. He concedes that the district court did not identify a "closely analogous" case. Instead, Allin relies on generalized assertions of law. First, Allin argues that it was clearly established that a governmental actor is liable under § 1983 when he knows about a constitutional violation and has the requisite "personal involvement." Second, he contends that there need not be a case directly on point for a reasonable officer to know that Barr's actions were unlawful. As support, Allin provides a string cite to *Soldal v. Cook Cnty*., 506 U.S. 56, 61 (1992), *Perry v. Sheehan*, 222 F.3d 309, 316 (7th Cir. 2000), and *Dixon v. Lowery*, 302 F.3d 857, 866–67 (8th Cir. 2002), with parentheticals containing generalized assertions of law.[3]

The conduct in the cases cited by Allin would not alert every reasonable police officer that the particular conduct taken by Barr would constitute governmental action or be in violation of the Fourth Amendment. In *Soldal*, the Supreme

---

[3] Significantly, Allin's argument based on these cases is raised for the first time on appeal. These cases were not even mentioned in his opposition to Barr's motion for summary judgment.

Court held that the forcible removal of the plaintiff's mobile home, leaving him dispossessed of his home, constituted a seizure invoking the protections under the Fourth Amendment. 506 U.S. at 61. In *Perry v. Sheehan*, officers seized a plaintiff's firearms from plaintiff's apartment "even though they knew that the eviction had been stayed by order of the court and thus that the seizure was not pursuant to any court order." 222 F.3d at 317. In *Dixon v. Lowery*, the Eighth Circuit found that reasonable officers would have known that the plaintiff's rights were being violated when the officers commandeered a restaurant, without a court order, to the exclusion of the owner and personally occupied the premises for three weeks. 302 F.3d at 864–66. While these cases are helpful in establishing, in general, that there is a Fourth Amendment right against unreasonable seizures, the particular conduct in those cases does not establish beyond debate that Barr's particular conduct in the specific circumstances constituted either governmental action or a Fourth Amendment violation.

Contrary to what Allin must establish to defeat qualified immunity, the record here belies any contention that Barr acted plainly incompetently or that he knowingly violated the law. Baskett and Allin decided to present their dispute over the ownership of the motorcycle to Barr. Baskett told officers that Allin had given the motorcycle to her for taking care of him when he was sick. Baskett produced a certificate of title. Under Illinois law, the certificate of title "provide[s] the public with a readily available means of identifying the owners … to the vehicle described in the certificate of title." *Spaulding v. Peoples State Bank of Bloomington*, 323 N.E.2d 143, 144 (Ill. App. Ct. 1975) (citation omitted). Thus, under Illinois law, there was a

rebuttable presumption that Baskett was the owner of the motorcycle. Even then, Barr took additional steps in his investigation. It was undisputed that Springfield Police officers ran title searches and relied upon the results when responding to removal of property calls. Barr conducted a title search, which revealed that the title had been in Baskett's name since August 29, 2011—approximately six months before the day in question. In response, Allin admitted to Barr that he signed over the title, but claimed that he did not pass ownership to Baskett. Allin informed Barr that he filed a police report claiming that the title was stolen two days prior. The officers, however, ran a search on their computer and the search did not reveal that the motorcycle was reported stolen. In the end, with the evidence pointing to Baskett as the owner of the motor-cycle, Barr is entitled to qualified immunity. The district court erred in denying Barr's motion for summary judgment on qualified immunity grounds.

We reverse the district court's denial of Barr's motion for summary judgment on qualified immunity grounds, and direct the district court to grant the motion.