┌─────────────────────────────────────────┐
**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1
└─────────────────────────────────────────┘

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 27, 2017[*]
Decided March 29, 2017

**Before**

RICHARD A. POSNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

Nos. 16-3440 & 16-3442

| | |
|---|---|
| SHAHRAM MALEKPOUR, | Appeals from the |
| *Plaintiff-Appellant*, | United States District Court for the |
| | Northern District of Illinois, |
| *v.* | Eastern Division. |
| | |
| ELAINE L. CHAO, | Nos. 12 C 6569 & 12 C 6999 |
| Secretary of the United States | |
| Department of Transportation, | James B. Zagel, |
| *Defendant-Appellee*. | *Judge.* |

**O R D E R**

Shahram Malekpour works as an aerospace engineer for the Federal Aviation Administration (an agency within the Department of Transportation). These consolidated appeals arise from a pair of overlapping lawsuits (which, for simplicity, we treat as one) in which he claims that the FAA violated Title VII of the Civil Rights Act of

---

[*] We have agreed to decide these appeals without oral argument because the briefs and records adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

1964. *See* 42 U.S.C. § 2000e–16(c). Malekpour alleged that he suffered discrimination because he is Muslim and was born in Iran. He also alleged that the agency retaliated after he complained to the Equal Employment Opportunity Commission. The district court granted summary judgment for the FAA, reasoning that a jury could not permissibly find that a brief suspension without pay—the only harm sufficiently adverse to be actionable—was discriminatory or retaliatory. We agree with this analysis.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Allin v. City of Springfield*, 845 F.3d 858, 861 (7th Cir. 2017) (quoting FED. R. CIV. P. 56(a)). We review grants of summary judgment de novo, drawing "all inferences in the light most favorable to the nonmoving party." *Id.* On appeal Malekpour principally argues that the district court disregarded evidence creating genuine disputes of fact about his claims of discrimination and retaliation. We disagree. Malekpour has not pointed us to any relevant evidence overlooked by the district court (though his submissions at summary judgment include a great deal of information that the district court would have been authorized to ignore as inadmissible hearsay. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("[A] court may consider only admissible evidence in assessing a motion for summary judgment."). But even taking as true all of Malekpour's unsupported allegations, we agree with the district court that a jury could not reasonably infer that he suffered actionable workplace discrimination or was retaliated against for complaining about perceived discrimination.

In analyzing Malekpour's claims of discrimination and retaliation, the district court first asked if any action taken against him, standing alone, was "materially adverse" or, if viewed collectively, the actions attributable to the agency created a hostile work environment. *See Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014) (defining a hostile work environment as one where the "workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment") (quotation marks omitted); *Porter v. City of Chicago*, 700 F.3d 944, 954 (7th Cir. 2012) (explaining that adverse employment action is an element of a claim of disparate treatment); *Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009) (noting that "an employer's retaliatory conduct is actionable only if it would be materially adverse to a reasonable employee"). Malekpour characterizes as adverse a litany of workplace interactions: (1) he was removed—at his own request—as project manager for an aircraft-safety directive after disagreeing with management about the directive's wording; (2) a manager said Shahram is too difficult a name to pronounce and suggested

using "Shawn" for "ease of conversation"; (3) a manager critiquing a report written by Malekpour said his analysis made the FAA appear "chicken"; (4) a supervisor threatened to "fire your ass" if Malekpour didn't follow directions; (5) a coworker criticized him on several occasions; (6) a manager predicted he would not "last long" at the agency; (7) management denied and later granted a request for compensatory time; (8) a manager asked Malekpour to use annual leave after arriving 15 minutes late but later rescinded that request; (9) Malekpour's complaint to an FAA safety hotline was deemed invalid; (10) he found on his desk an anonymous note with the word "hostage"; (11) his manager referred an incident involving Malekpour and another employee to the FAA's "Accountability Board" (apparently nothing came of this); (12) a supervisor threatened him with unspecified "consequences" for refusing to attend a meeting; (13) he was suspended for ten days without pay after failing to explain personal charges on his government credit card; and (14) information about that suspension was put into the "public record" by the Department of Labor and affected his credit.

The district court sorted through these actions and concluded that only one was "materially adverse." An adverse action for a discrimination claim must "materially alter the terms or conditions of employment to be actionable," *Porter*, 700 F.3d at 954, while an adverse action for retaliation purposes must be "serious enough to dissuade a reasonable employee from engaging in protected activity," *Poullard v. McDonald*, 829 F.3d 844, 858 (7th Cir. 2016). Most of the incidents Malekpour describes do not come close to meeting either standard. Instead, some appear to be commonplace management decisions, and others are merely "petty slights or minor annoyances that often take place at work and that all employees experience." *See id*. at 857 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *see also Griffin v. Potter*, 356 F.3d 824, 829–30 (7th Cir. 2004) (listing cases involving "trivial," and thus nonactionable, grievances). A couple of incidents might be considered offensive, but isolated incidents such as these are not actionable unless they are "extremely serious" or unless they "amount to discriminatory changes in the terms and conditions of employment." *Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 648 (7th Cir. 2011) (quotation marks omitted).

But three events on Malekpour's list merit discussion. First, taking away Malekpour's oversight of the aircraft-safety directive might have been materially adverse if certain conditions were present. Job reassignments are sometimes significant enough to be actionable, but only if they affect the employee's "work hours, compensation, or career prospects." *Stephens*, 569 F.3d at 790–91. Malekpour did not offer evidence that his job was affected at all by the reassignment, much less that his duties or career prospects were significantly altered (we know that his pay was

unaffected). More importantly, Malekpour tells us that *he* initiated the reassignment by asking management to remove his name from the directive, so the decision to respect his wishes cannot fairly be characterized as "adverse." *See Hancock v. Potter*, 531 F.3d 474, 478–79 (7th Cir. 2008) (concluding that an employer's efforts to accommodate a plaintiff's self-reported, physical work restrictions could not be considered adverse).

Second, Malekpour asserts that his manager's threat of "consequences" followed his refusal to attend a meeting that he believed would involve mediating his ongoing complaints of discrimination (the FAA insists this was not the purpose of the meeting). Malekpour makes much of the fact that the EEOC agreed with him that this threat was retaliatory (the EEOC awarded him $3,000 in "non-pecuniary, compensatory damages" after concluding that the threat would "dissuade a reasonable worker" from pursuing relief under Title VII). Had we been asked to review the EEOC's finding, we would be hard-pressed to agree that the threat was "materially adverse." *See Poullard*, 829 F.3d at 856 (explaining that "threats of unspecified disciplinary action" aren't "enough to support a claim for retaliation"); *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 531 (7th Cir. 2003) (noting that an "unfulfilled threat" was not a materially adverse employment action). But the FAA did not challenge the EEOC's ruling on this matter, and Malekpour does not appear to be dissatisfied with the relief awarded. Instead, it seems he included this particular incident in his list of adverse actions because in his view the EEOC's conclusion about this one event proves that *everything* that happened to him at work was discriminatory or retaliatory. But apart from the fact that one isolated incident is weak proof that *other* actions were based on improper motives, *cf. Poullard*, 829 F.3d at 857, a federal court presiding over a Title VII suit is not bound by the EEOC's factual conclusions, *Boss v. Castro*, 816 F.3d 910, 914–15 (7th Cir. 2016); *Smith v. Potter*, 445 F.3d 1000, 1011 (7th Cir. 2006), *overruled in unrelated part by Hill v. Tangherlini*, 724 F.3d 965, 971 n.1 (7th Cir. 2013).

The third item meriting comment from Malekpour's list is also the only one the district court deemed "materially adverse": the ten-day suspension without pay. Although acknowledging that this suspension was sufficiently adverse to be actionable, the district court reasoned that Malekpour's evidence of an underlying discriminatory or retaliatory motive is too thin to survive summary judgment. The "critical question" here is whether a reasonable jury could infer the existence of discrimination or retaliation. *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 899–901 (7th Cir. 2016), *petition for cert. filed* (U.S. Feb. 27, 2017) (No. 16-1032); *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764–65 (7th Cir. 2016). The district court concluded that either inference would be unreasonable and we agree. The FAA provided a legitimate reason for Malekpour's suspension: he

improperly used a government credit card for personal expenses and failed to explain the charges when asked. Malekpour disputes that characterization, arguing that an FAA official authorized use of the card for employment-related travel and that the multiple charges at local merchants resulted from identity theft. But Malekpour does not point to admissible evidence supporting this explanation or suggesting that the FAA lied about its reason for suspending him. *See Hill*, 724 F.3d at 968 (explaining that the employer's reason for discharge must be accepted unless shown to be a "mask to hide unlawful discrimination").

It changes nothing for Malekpour to assert, as he does, that his list of unfavorable actions evidences a hostile work environment (which is a form of discrimination, *Alexander*, 739 F.3d at 980). We agree with the district court that "Malekpour's interactions with his colleagues do not come close to the level of hostility necessary to support a hostile work environment claim." The incidents he describes were infrequent (the district court noted they were "spaced out over six years") and were not so hostile as to "alter the conditions of the victim's employment and create an abusive working environment." *See Boss*, 816 F.3d at 920 (internal quotation marks omitted); *Porter*, 700 F.3d at 956. And though some may view the FAA's environment as unfriendly (an EEOC administrative law judge found that Malekpour's office was indeed a difficult place to work), it is not the court's job to resolve that problem. *See Boss*, 816 F.3d at 918 ("Title VII does not set forth a general civility code for the American workplace.").

Thus the district court correctly granted summary judgment for the FAA on Malekpour's Title VII claims. We observe, however, that in the district court (and again here) Malekpour has contended that the FAA violated the First Amendment and the Whistleblower Protection Act. *See* 5 U.S.C. § 2302(b)(8)(A). But we see no other claims lurking in Malekpour's allegations; all along he has said that his religion and Iranian heritage explain the adverse actions about which he complains, and for federal employees claiming discrimination on the basis of religion and national origin (as well as reprisal for complaining about discrimination), Title VII is the exclusive judicial remedy. *See* 42 U.S.C. § 2000e–16; *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976); *Mlynczak v. Bodman*, 442 F.3d 1050, 1057 (7th Cir. 2006); *see also Reynolds v. Tangherlini*, 737 F.3d 1093, 1099 n.3 (7th Cir. 2013) (noting that we "have assumed that the federal-sector provision of Title VII" prohibits retaliation). In particular, Malekpour did not allege that he engaged in protected disclosures that could lead to a remedy under the Whistleblower Protection Act, and, regardless, a claim under that Act must be presented first to the United States Office of Special Counsel and then to the Merit Systems Protection Board before any judicial review, and Malekpour did not follow that

procedure. *See* 5 U.S.C. §§ 1214(a)(3), 1221(a), (h), 7703(b); *McInnis v. Duncan*, 697 F.3d 661, 662 (7th Cir. 2012) (noting that federal employees must bring whistleblower claims first to the Office of Special Counsel); *Richards v. Kiernan*, 461 F.3d 880, 885–86 (7th Cir. 2006) (noting that the Civil Service Reform Act channels federal whistleblower claims to the Merit Systems Protection Board instead of district courts).

Finally, we address Malekpour's contention that District Judge Zagel should have recruited counsel for him. When Malekpour asked Judge Zagel to find him a lawyer, he already had fired one team of lawyers recruited for him earlier in the litigation by a different district judge. Judge Zagel declined to recruit new counsel, pointing out that Malekpour's application to proceed in forma pauperis showed he is not indigent. Courts need not recruit counsel for those who can pay, *see* 28 U.S.C. § 1915(e), so this ruling was proper, *see Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (noting that district courts have discretion to recruit counsel for *indigent* plaintiffs).

Malekpour also challenges a number of Judge Zagel's procedural rulings and takes issue with how the FAA conducted his deposition. We have considered these additional arguments, and none has merit. The judgments of the district court are

AFFIRMED.