**Davin GREEN, Plaintiff-Appellee,**

**v.**

**Jonathon NEWPORT, Defendant-Appellant.**

**No. 16-1536**

United States Court of Appeals, Seventh Circuit.

Argued November 9, 2016

Decided August 22, 2017

William F. Sulton, Attorney, PETER-SON, JOHNSON & MURRAY, S.C., Milwaukee, WI, for Plaintiff-Appellee.

Patrick Joseph McClain, Attorney, MILWAUKEE CITY ATTORNEY'S OFFICE, Milwaukee, WI, for Defendant-Appellant.

Before BAUER and KANNE, Circuit Judges, and FEINERMAN,* District Judge.

BAUER, Circuit Judge.

On November 26, 2014, around 8:30 p.m., Officer Jonathon Newport of the Milwaukee Police Department and his partner, Officer Busshardt, responded to a suspicious person complaint made by an employee of the O'Reilly Auto Parts store in Milwaukee, Wisconsin.[1] A dispatcher told Officer Newport that a Mercury Grand Marquis drove around the store's parking lot about five times. Officer Newport believed this behavior was consistent with "casing" a business in preparation for a robbery. He knew that this store had been robbed within the last two months and that firearms were brandished in the

---

* Of the United States District Court for the Northern District of Illinois, sitting by designation.

1. We accept the factual background set forth by the district court, which was based on the undisputed portions of the parties' proposed findings of fact, stipulated facts developed at oral argument, and the transcript at the suppression hearing.

course of the robbery. Officer Newport was also aware that the store closed at 9 p.m. and would soon be empty.

Officer Newport drove to the parking lot, and observed a Mercury Marquis in a stall in front of the store about thirty feet from its entrance. An overhead parking lot lamp was next to and south of the Mercury Marquis. A Chevrolet Malibu, driven by Davin Green, was parked next to the Marquis. According to Officer Newport, Joe Lindsey, the driver of the Marquis, stood outside the driver's door of his vehicle, next to the front passenger door of the Malibu. Also according to Officer Newport, Lindsey leaned into the front passenger window of the Malibu for a few moments and stood back up. Officer Newport testified that he suspected that Lindsey had concealed a weapon when leaning into the Malibu and decided to investigate further. Green disputes that Lindsey stood outside the driver's door of his vehicle, next to the passenger door of the Malibu, and also that Lindsey ever leaned into the front passenger window of the Malibu.

Officer Newport activated his squad car's emergency lights and stopped behind the Marquis. The officers told Lindsey and Green to put up their hands. Officer Newport approached Green and asked if Green had any weapons; Green replied "no." Officer Newport then directed Green to exit the vehicle.

Officer Newport's account of what happened next is disputed by Green: Officer Newport said that when Green exited his vehicle, his right arm was kept tight to his body while his left swung freely and that after asking Green to raise his arms out "like an airplane," Green raised only his left arm. Officer Newport grabbed Green's right wrist to force his right arm up, but Green resisted. Officer Newport grabbed Green's right wrist to position his arm and

proceeded to pat him down and discovered a handgun in Green's waistband.

Green sued Officer Newport and the City of Milwaukee claiming under 42 U.S.C. §§ 1983 and 1988 they violated his right to be free from unreasonable searches and seizures; that Officer Newport conducted the stop and frisk without reasonable suspicion. The parties filed cross-motions for summary judgment. The court ruled that the investigatory stop violated a clearly established constitutional right, and denied qualified immunity. Officer Newport timely appealed.

## I. DISCUSSION

### A. Jurisdiction

 We have interlocutory jurisdiction over a district court's denial of summary judgment on qualified immunity grounds. *Gibbs v. Lomas*, 755 F.3d 529, 535 (7th Cir. 2014). We consider such appeals to the extent that the defendant public official presents an "abstract issue of law[,]" such as "whether the right at issue is clearly established or whether the district court correctly decided a question of law[.]" *Huff v. Reichert*, 744 F.3d 999, 1004 (7th Cir. 2014) (citations omitted). We review a district court's qualified immunity determination *de novo*. *D.Z. v. Buell*, 796 F.3d 749, 753 (7th Cir. 2015) (citation omitted).

### B. Qualified Immunity Framework

 "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Mullenix v. Luna*, — U.S. ——, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)). "Qualified immu-

nity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231, 129 S.Ct. 808. "The defense provides 'ample room for mistaken judgments' and protects all but the 'plainly incompetent and those who knowingly violate the law.'" *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)).

To overcome a defendant's invocation of qualified immunity, a plaintiff must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) (citation omitted). "If *either* inquiry is answered in the negative, the defendant official is entitled to summary judgment." *Gibbs*, 755 F.3d at 537. Courts are free "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236, 129 S.Ct. 808. Because the answer to this inquiry is dispositive, we address only whether the right at issue was clearly established.

The plaintiff bears the burden of demonstrating that a right was clearly established at the time the alleged violation occurred. *Kiddy–Brown v. Blagojevich*, 408 F.3d 346, 359 (7th Cir. 2005). For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix*, 136 S.Ct. at 308 (citation omitted). The right must be "sufficiently clear that every reasonable official would under-

stand that what he is doing violates that right." *Id.* (citation and quotation marks omitted).

The Supreme Court has instructed that "clearly established law should not be defined at a high level of generality." *White v. Pauly*, —— U.S. ——, 137 S.Ct. 548, 552, 196 L.Ed.2d 463 (2017) (per curiam) (citation and quotation marks omitted). While a case directly on point is not required, "the clearly established law must be 'particularized' to the facts of the case." *Id.* at 551 (citation omitted). The Court has found that "[s]uch specificity is especially important in the Fourth Amendment context, where ... 'it is sometimes difficult for an officer to determine how the relevant legal doctrine ... will apply to the factual situation the officer confronts.'" *Mullenix*, 136 S.Ct. at 308 (citation and alterations omitted).

In this case, the district court concluded that Officer Newport conducted an investigatory stop based solely on a "suspicious person" report, and in doing so violated Green's clearly established Fourth Amendment right and that Officer Newport was therefore not entitled to qualified immunity.

Officer Newport argues that the district court erred by defining Green's Fourth Amendment right without the requisite specificity. He further argues that the case law relied upon by the district court is factually dissimilar to the facts in this case, and the court failed to demonstrate that Green's Fourth Amendment rights were clearly established. We agree.

The Fourth Amendment prohibits unreasonable searches and seizures, but police may conduct an investigatory stop of an individual when the officer has reasonable suspicion that a crime may be afoot. *Terry v. Ohio*, 392 U.S. 1, 21–22, 88

S.Ct. 1868, 20 L.Ed.2d 889 (1968). Such stops, referred to as *Terry* stops, need not be supported by probable cause; rather, they are permissible as long as officers have a "reasonable articulable suspicion that criminal activity is afoot." *United States v. Riley*, 493 F.3d 803, 808 (7th Cir. 2007) (citation omitted).

While the cases relied upon by the district court establish the contours of reasonable suspicion, they do not place the constitutionality of Officer Newport's conduct "beyond debate." In *Gentry*, a police officer stopped the plaintiff based on nothing more than a dispatch report that a suspicious person was pushing a wheelbarrow, which is not in and of itself a crime. 597 F.3d at 843. In *Packer*, police officers stopped a vehicle's occupants based on a citizen's call reporting a suspicious vehicle parked along the street, at 1:00 o'clock in the morning. 15 F.3d at 658. In both cases, the dispatch reports did not provide any specific facts concerning a crime, just a general reference to a suspicious person or vehicle. *Id.* at 659; *Gentry*, 597 F.3d at 846. Therefore, police "lacked the minimal detail of information that would point to any arguably particularized suspicion of criminal conduct." *Packer*, 15 F.3d at 659. In both *Gentry* and *Packer*, we found that such a generalized "suspicious person" report, without more, was insufficient to justify a *Terry* stop. *Id.* at 658–59, 88 S.Ct. 1868; 597 F.3d at 845–46. The instant case is easily distinguishable.

■ Determining whether an officer had reasonable suspicion to support a *Terry* stop requires courts to examine "the totality of the circumstances known to the officer at the time of the stop, including the experience of the officer and the behavior and characteristics of the suspect." *D.Z.*, 796 F.3d at 754 (citation omitted). At the time Officer Newport conducted the stop, he had information that a Marquis circled the auto parts store parking lot multiple times near the close of business. He believed that this conduct was consistent with casing a business in order to commit a robbery. Officer Newport was also aware that the store had been robbed within the last two months at closing time. The Supreme Court has held that "officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); *see also United States v. Oglesby*, 597 F.3d 891, 894 (7th Cir. 2010) (collecting cases). While the prior robbery does not make this area "high crime" per se, *see Wardlow*, 528 U.S. at 124, 120 S.Ct. 673, we believe it is a relevant contextual consideration.

We recognize that there are factual disputes between Green and Officer Newport, and that the district court refused to credit certain factual assertions by Officer Newport. But even construing the facts in Green's favor, we cannot find that the police lacked "minimal information" to warrant suspicion of criminal conduct. The facts of *Gentry* and *Packer* are too dissimilar to control this case, and they do not place the constitutionality of Officer Newport's stop beyond debate.

■ Green counters that, while *Gentry* and *Packer* may not have expressly proscribed Officer Newport's conduct, these cases provided him "fair warning" that his conduct was unlawful. *See Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (finding that officers violate clearly established law in novel factual circumstances when precedent gives them "fair warning" that their conduct is unconstitutional). It is not clear on what legal basis Green asserts this argument, but as we have already concluded, *Gentry*

and *Packer* are too factually dissimilar to control this case. The inquiry into whether a right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 136 S.Ct. at 308 (citation omitted). Green ignores the context of the situation which Officer Newport confronted: the auto store's recent robbery; the "casing" behavior reportedly carried out by the driver of the Marquis; and the proximity to the store's closing hour. These facts make this case wholly distinguishable from *Gentry* and *Packer*, in which officers lacked any information to warrant suspicion of criminal conduct, and consequently these cases cannot provide Officer Newport "fair warning" that his conduct was unlawful. Accordingly, the district court erred in its determination that Officer Newport's *Terry* stop violated clearly established law, and we find that Officer Newport is entitled to qualified immunity.

■ We briefly address whether Officer Newport is entitled to qualified immunity on Green's challenge to the lawfulness of Officer Newport's frisk. Our cases recognize that a reviewing court must analyze a frisk separately from an initial stop. *United States v. Williams*, 731 F.3d 678, 683 (7th Cir. 2013). An officer performing a *Terry* stop may not automatically frisk the individual subject to the stop; the officer must have some articulable suspicion that the subject is "armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009).

■ Green has the burden of demonstrating that the frisk violated a clearly established law. *See Kiddy–Brown*, 408 F.3d at 359. Green relies on the same cases that he relied upon for his *Terry* stop analysis. As we stated above, much of this precedent is factually inapposite or simply irrelevant; *Gentry* is the only relevant case. However, in *Gentry*, we found that the police officers lacked any basis for their belief that the plaintiff was concealing a weapon or posed a danger to others, and therefore found the frisk unconstitutional. 597 F.3d at 847–48. Importantly, Officer Newport knew that the prior attack on the store involved a weapon so he had reason to suspect that when Lindsey leaned into the Malibu he was concealing a weapon in Green's vehicle.

■ We note that, viewing the facts in the light most favorable to Green, Officer Newport did not see Lindsey stand next to the front passenger door of Green's Malibu and did not see Lindsey lean into the Malibu's front passenger window. However, as we have held, reasonable suspicion that someone has committed or is about to commit a burglary or another crime typically involving a weapon generally gives rise to a reasonable suspicion that the person might be armed. *See United States v. Snow*, 656 F.3d 498, 501–03 (7th Cir. 2011); *United States v. Barnett*, 505 F.3d 637, 640–41 (7th Cir. 2007) (collecting cases). This principle applies with equal force in this case and provides Officer Newport with an independent justification for conducting a protective frisk. Given these considerations, Officer Newport had a plausible reason to suspect that Green was armed and dangerous, in marked contrast with the facts of *Gentry*. Green has failed to meet the burden of establishing that the frisk violated clearly established law, and we find that Officer Newport is entitled to qualified immunity regarding the frisk.

## II. CONCLUSION

We reverse the district court's denial of Officer Newport's motion for summary

judgment on qualified immunity grounds, and direct the court to grant the motion.