**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1909
_____

SAMIRA RANDOLPH-ALI,
                                            Appellant

v.

ANTHONY MINIUM
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1:16-cv-01625)
District Judge:  Honorable Christopher C. Conner
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 3, 2019
Before:  KRAUSE, MATEY and COWEN, Circuit Judges

(Opinion filed: December 4, 2019)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Samira Randolph-Ali appeals pro se from the District Court's order granting the defendant's motion for summary judgment in a civil rights suit alleging excessive force during her arrest. For the reasons that follow, we will affirm.

On August 6, 2014, Randolph-Ali's husband assaulted her in her home. One of Randolph-Ali's children called 911, reporting that she "needs police." Although the caller disconnected the call after only 15 seconds, the dispatcher reported "lots of commotion in [the] background" and described the call as "very active." Several Steelton Borough Police Department officers responded, including Detective Anthony Minium. Detective Minium was familiar with the address because the police had previously responded to numerous domestic disturbances there. He was also aware that Randolph-Ali had a protection-from-abuse (PFA) order against her husband. When Detective Minium arrived at the home, he was approached by a young girl on the street who was crying, who stated that she heard fighting in the home, and who encouraged the police to hurry because her friend was inside the residence.

Detective Minium encountered Randolph-Ali at her front door. She was visibly upset, and spoke to Detective Minium through her screen door. When Detective Minium asked Randoldph-Ali about her husband's whereabouts, Ali-Randolph replied that "he ran." But one of the children in the home pointed upstairs. Detective Minium also observed several other children in the living room who were upset and crying, as well as the smell of marijuana coming from inside the home. Detective Minium repeatedly told

2

Randolph-Ali that he needed to enter the home to investigate and make sure that the scene was safe, but Randolph-Ali refused to allow him inside. Detective Minium warned Randolph-Ali that he would charge her with obstruction of justice if she did not let him in to search.

As Detective Minium attempted to arrest Randolph-Ali, an altercation ensued. According to Randolph-Ali, Detective Minium "yanked [the screen] door open," "[g]rabbed [her] by [her] waist and tackled [her] to the ground," and tasered her three times within seconds of the initial physical contact.[1] During the altercation, Randolph-Ali was "trying to get the taser off of [her]." Ultimately, Randolph-Ali was handcuffed, placed in a police car, and transported to the Dauphin County Booking Center. Although she had hit her head on a speaker, Randolph-Ali did not complain of any injuries or request medical treatment. The next day, Randolph-Ali was charged with obstructing the administration of law, resisting arrest, disorderly conduct, endangering the welfare of children, and possession of a small amount of marijuana and drug paraphernalia. Approximately one year after her arrest, Randolph-Ali pleaded guilty to disorderly conduct hazardous/physical offense.

---

[1] The taser was used in "drive stun" mode, whereby it "delivers an electric shock to the victim, but it does not cause an override of the victim's central nervous system as it does in dart-mode." Mattos v. Agarano, 661 F.3d 433, 443 (9th Cir. 2011).

In August 2016, Randolph-Ali filed a complaint, which she later amended several times, raising a Fourth Amendment excessive force claim, as well as a state law claim for assault and battery, against Detective Minium.[2]  Detective Minium filed a motion for summary judgment.  The District Court granted that motion, holding that Detective Minium's "use of force did not violate Randolph-Ali's Fourth Amendment rights and that, even if it did, the particular right in question was not clearly established on August 6, 2014."  Because the use of force was not unreasonable, the District Court also rejected Randolph-Ali's assault and battery claim.  Randolph-Ali appealed.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.  "We review de novo district court orders granting or denying summary judgment, applying the same test required of the district court and viewing inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party."  Schmidt v. Creedon, 639 F.3d 587, 594-95 (3d Cir. 2011) (quotation marks and citations omitted).  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any

---

[2] Randolph-Ali's amended complaints detailed disputes that she had over the course of several years with police departments and other municipal agencies in the Harrisburg area.  The District Court dismissed some of the claims sua sponte with prejudice under 28 U.S.C. § 1915(e)(2), (ECF #21), and later granted the defendants' motion to dismiss the remaining claims, with the exception the excessive force and assault and battery claims, (ECF #40).  Because Randolph-Ali has not challenged those determinations on appeal, we will not consider them.  See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993) (noting that issues not raised on appeal are deemed abandoned and waived).

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Qualified immunity is an affirmative defense that "shield[s] officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). To overcome that immunity, the facts must show (1) the violation of a constitutional right and (2) that the right was clearly established at the time of the alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). "If the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense." Cummings v. Dean, 913 F.3d 1227, 1239 (10th Cir. 2019) (internal quotation marks, alteration omitted). A court may address these prongs in either order. Pearson, 555 U.S. at 236.

Here, we begin by addressing the second prong because it is dispositive. See Reichle v. Howards, 566 U.S. 658, 664 (2012) (stating that "courts may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all"); see also Green v. Newport, 868 F.3d 629, 633 (7th Cir. 2017) ("Because the answer to [the second prong] inquiry is dispositive, we address only whether the right at

5

issue was clearly established.").  "[T]here must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited."  McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001).  The Supreme Court has emphasized that "'[w]e do not require a case directly on point' before concluding that the law is clearly established, 'but existing precedent must have placed the statutory or constitutional question beyond debate.'"  Stanton v. Sims, 571 U.S. 3, 6 (2013) (per curiam) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)); see also Williams v. Sec'y Pa. Dep't of Corr., 848 F.3d 549, 557-58 (3d Cir. 2017).  We look first for applicable Supreme Court precedent but if none exists, we may rely on a "robust consensus of cases of persuasive authority" in the Courts of Appeals.  Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015) (per curiam) (internal quotation marks omitted).  Notably, "clearly established law should not be defined at a high level of generality" but instead must "be particularized to the facts of the case."  White v. Pauly, 137 S. Ct. 548, 552 (2017) (per curiam) (citation omitted).

We conclude that Detective Minium is entitled to qualified immunity.  It was not clearly established in August 2014 that an officer uses excessive force when he tackles and uses a taser in "drive stun" mode on an individual he is attempting to arrest because she refuses to allow officers to enter her home to ensure the safety of the home's occupants from a perpetrator of domestic violence who the officer has reason to believe is inside.  As the District Court properly noted, Randolph-Ali has failed to identify any

6

judicial decisions indicating to law enforcement that Detective Minium's conduct would contravene the Fourth Amendment. See Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997) ("[T]he plaintiff bears the *initial* burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right." (emphasis added)). At the time of the incident, the law was clear that it was unlawful to use a taser on an individual who is nonviolent, compliant, and poses no threat of danger. See Hagans v. Franklin Cty. Sheriff's Office, 695 F.3d 505, 509 (6th Cir. 2012); Brown v. City of Golden Valley, 574 F.3d 491, 499 (8th Cir. 2009). But courts had held that the use of a taser on an individual who disobeys an officer or actively resists an officer's commands is constitutionally reasonable. See, e.g., Carpenter v. Gage, 686 F.3d 644, 650 (8th Cir. 2012); United States v. Norris, 640 F.3d 295, 303 (7th Cir. 2011) (use of taser on defendant was reasonable where defendant had "displayed an unwillingness to accede to reasonable police commands, and his actions suggested an intent to use violence to fend off further police action").

We acknowledge that the Ninth Circuit had held, prior to August 2014, that officers employed excessive force when they used a taser without warning on a potential domestic abuse victim whose "crime, if any, was minimal," who "posed no threat to the officers," who "minimally resisted [her husband's] arrest while attempting to protect her own body and to comply with [an officer's] request that she speak to him outside, and [who] begged everyone not to wake her sleeping children." Mattos v. Agarano, 661 F.3d

7

433, 449-51 (9th Cir. 2011) (en banc).  The facts in <u>Mattos</u>, however, are distinguishable from those presented here.  The officer in <u>Mattos</u> used the taser in "dart mode," which constitutes an intermediate, significant level of force, while Detective Minium tased Randolph-Ali in "drive stun" mode, which causes incapacitating pain, but does not paralyze the entire body.  See <u>McKenney v. Harrison</u>, 635 F.3d 354, 364 (8th Cir. 2011) (Murphy, J., concurring).  In addition, Randolph-Ali refused to comply with Detective Minium's demand that she allow him inside to search for the suspect.  By contrast, the plaintiff in <u>Mattos</u> "was attempting to comply with [a police officer's] request to speak with her outside when she got physically caught in the middle between [another police officer] and [her husband]."  <u>Mattos</u>, 661 F.3d at 450.  Finally, Randolph-Ali's crime was not "minimal."  Instead, she was arrested for, inter alia, endangering the welfare of children, obstructing the administration of law, resisting arrest, and disorderly conduct.

Under these circumstances, we conclude that there is no consensus of authority that Detective Minium's actions under the particular circumstances of this case implicated a clearly established constitutional right.  Accordingly, we will affirm the District Court's judgment.[3]

---

[3] Randolph-Ali's motion to supplement the appendix and her motion to file a reply brief out of time are granted, but her motion for appointment of counsel is denied.