In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 19-2580

MOHAMMAD SIDDIQUE,

*Plaintiff-Appellant,*

*v.*

MICHAEL LALIBERTE, DAVID STOCKTON, and RICHARD THOMAS,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 15-cv-1 — **J.P. Stadtmueller**, *Judge*.

———————————

ARGUED MARCH 31, 2020 — DECIDED AUGUST 26, 2020

———————————

Before KANNE, WOOD, and HAMILTON, *Circuit Judges*.

KANNE, *Circuit Judge*. In 2013, Mohammad Siddique applied for a temporary student-government position at the University of Wisconsin–Madison. His application was said to have been rejected because he did not meet a minimum-enrollment requirement crafted for the position. Siddique offers an alternative narrative: his application was rejected not because of the enrollment criteria but because of his critical stances against members of the University administration

who worked with the student government and who were in-
volved with the application process, including the Defend-
ants.

Siddique sued University officials, Laliberte, Stockton,
and Thomas, in their individual capacities, under the Civil
Rights Act of 1871, 42 U.S.C. § 1983. He alleged that these De-
fendants' rejection of his application for the student-govern-
ment position violated his First Amendment right to be free
from governmental retaliation.

The district court determined that qualified immunity pre-
vented Siddique's claim from proceeding to trial and granted
summary judgment to the Defendants. We affirm because fed-
eral law does not clearly establish that enforcing an enroll-
ment requirement for a student-government position violates
the First Amendment.

## I. BACKGROUND[1]

In 2013, Mohammad Siddique was a student at the Uni-
versity of Wisconsin–Madison and actively involved in stu-
dent government. He was also an outspoken critic of the Uni-
versity and its officials, including Defendants Michael
Laliberte, Vice Chancellor for Student Affairs; David Stock-
ton, Student Government Relations Coordinator; and Richard
Thomas, Director of the Student Union. During his time in
student government, Siddique successfully advocated for
policies adverse to the Defendants' interests. To take a few

---

[1] This case comes to us on appeal from the district court's grant of sum-
mary judgment to the Defendants. We describe the facts in a light most
favorable to Siddique—the non-moving party—with all reasonable infer-
ences drawn in his favor. *Daugherty v. Page*, 906 F.3d 606, 609 (7th Cir.
2018).

examples, Siddique successfully campaigned to defund Stockton's position; he advocated for withdrawing student support for building a new student union; and he supported student leaders who would fight to increase the student government's autonomy from what was seen as overbearing University leadership in Student Affairs.

In the spring of 2013, students voted for the student-government candidates they wished to represent them during the next school year. After the student body elected its leaders, the University received complaints about the fairness of the election. In response, the Chancellor of the University commissioned an external review of the election, which uncovered a multitude of election irregularities. So, in May 2013, the Chancellor announced that the University would not recognize the results of the election.

A student organization called "the student court" rescheduled a new election to be held the following school year, in October 2013. A soon-to-be-constituted student "board of trustees" would be responsible for running the student government in the interim. The student court, in consultation with the University's administration (including Laliberte and Stockton), created an application for the board positions. To be considered for a position on the board, an applicant must have been enrolled in classes at the University with at least a 2.0 GPA. The application also contained a statement of cooperation requiring each applicant to agree to cooperate in good faith with the administration. But the application form did not make clear that an applicant would have to be enrolled in University courses (for either the summer or fall), in order to be considered for the position. This posed an eligibility problem for students like Siddique who were not enrolled in summer

courses, or who had not yet enrolled in their fall courses, when they submitted their applications.

Stockton was charged with screening the applications for eligibility and forwarding all eligible applications to the student court. Stockton also played a role in creating the application requirements and the code of conduct.

As we mentioned, Siddique had successfully advocated for student legislation to defund Stockton's position. Siddique applied for a position on the board, unaware that Stockton was tasked with reviewing applications. When Siddique applied in June, he was not enrolled in fall classes. He had, however, completed classes in the spring, remained enrolled at the University, and planned to enroll in classes for the fall semester. Stockton removed his application from the pool because Siddique was not enrolled in fall classes when he submitted his application.

Siddique received notice that his application was rejected. According to the Defendants, it was denied because he was not enrolled in fall classes and, therefore, did not meet the stated criteria for a board position. But Siddique suspected something more pernicious was afoot: he believed the Defendants rejected his application for the board because of his critical speech against the Defendants.

When the newly selected board came together, Laliberte and Stockton mentioned Siddique by name, and Laliberte referred to him as the "the Enforcer" of the "old SA." Laliberte and Stockton recommended that new board members ignore previous student-government members who were disruptive, uncooperative, and intimidating.

Siddique and other students turned to state and federal court to review the events that transpired at the University during the spring and summer of 2013. They brought a slew of different claims against dozens of defendants in a series of lawsuits (three state suits and this case) related to the "overthrow" of the elected student government, among other things. This federal case is the only continuing controversy; the state suits were dismissed. A district court initially dismissed the federal case with prejudice based on the pleadings, which Siddique appealed to our court. *See UWM Student Ass'n v. Lovell*, 888 F.3d 854 (7th Cir. 2018). We affirmed the district court's dismissal of most claims but remanded for the court to consider a small subset of other claims.

On remand, the suit was further narrowed to two claims: one under the Due Process Clause of the Fourteenth Amendment and a second under the First Amendment. The district court dismissed the due process claim on the pleadings, which Siddique does not appeal. His second claim alleges the Defendants rejected Siddique's application for the board in retaliation for his critical speech about them, in violation of the First Amendment. *See, e.g.*, *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (To prevail on a First Amendment retaliation claim, a plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the defendant's decision to take the retaliatory action." (citation omitted)). The Defendants moved for summary judgment on the retaliation claim.

The district court concluded that Siddique had proffered enough evidence on the merits of his retaliation claim to

proceed to trial. Construing the evidence in the light most fa-
vorable to Siddique, the court determined there were several
disputes of material fact about whether Siddique's applica-
tion was rejected in retaliation for his speech—for example, a
reasonable jury could conclude based on the evidence that the
Defendants had the motive and means to prevent Siddique
from attaining a position on the board.

Siddique also proffered some evidence that a university-
wide policy requiring minimum enrollment for extra-curricu-
lar activities was inconsistently applied to students during the
summer. One student selected to serve on the board did not
recall being fully enrolled in classes when he submitted his
application. On the other hand, several students who sup-
ported Siddique were ultimately appointed to the board. Still,
the court surmised that a jury, viewing the evidence most fa-
vorably to Siddique, could conclude that the Defendants
crafted and arbitrarily applied the enrollment requirement
against Siddique to retaliate against him, in violation of the
First Amendment.

The claim did not proceed to trial, however, because the
district court concluded the claim was foreclosed by qualified
immunity. The court recognized as clearly established that a
state cannot act in retaliation against a person speaking criti-
cally of it, but it determined federal law had not clearly estab-
lished the narrower right of a student to participate in student
government under all circumstances. Because the right Sid-
dique sought to vindicate had not been clearly established,
the court granted summary judgment to the Defendants.

Siddique raises two arguments on appeal. First, he asserts
that the clear contours of the law defeat any alleged immun-
ity. Second, he argues that the Defendants are not qualifiedly

immune because they did not affirmatively prove they acted within the scope of their authority.

We are not persuaded by either argument. Siddique waived the second argument, and he did not present any cases clearly establishing that reasonable actors in the Defendants' positions should have known that enforcing an enrollment requirement on the board violated Siddique's constitutional rights. And to the extent that Siddique's argument focuses on disparate enforcement of the enrollment requirement, we are not persuaded that his evidence (such as the recollections of a student who was selected) is sufficiently concrete to sustain his claim.

## II. ANALYSIS

We review the district court's grant of summary judgment and the Defendants' assertion of qualified immunity *de novo*. *Green v. Newport*, 868 F.3d 629, 632 (7th Cir. 2017). We first address whether the right Siddique seeks to vindicate was clearly established under federal law. Then we turn to Siddique's argument about the scope of authority.

### A. Qualified Immunity

Once the defense of qualified immunity is raised, the Defendants are entitled to dismissal unless (1) Siddique has come forward with facts that, when viewed in a light most favorable to him, constitute a violation of a federal constitutional right, and (2) the right was "clearly established" at the time of the alleged violation. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). We review each criterion *de novo*, and if the answer to either question is no, the Defendants are entitled to summary judgment. *Green*, 868 F.3d at 633. Siddique bears the burden of demonstrating the right was clearly established

when the violation occurred, such that a reasonable public official would have known his conduct was unlawful. *Id.* We elect to resolve this case on the second part of the qualified immunity test—whether the right was clearly established.

This appeal, in its current iteration, involves only a First Amendment retaliation claim. Siddique alleges the Defendants retaliated against him because of his speech. But when we are determining whether qualified immunity attaches to the Defendants' actions, the right at issue cannot be articulated so generally. Instead, we must "define carefully, and at the right level of detail, the constitutional right" being asserted. *Frederickson v. Landeros*, 943 F.3d 1054, 1059 (7th Cir. 2019); *see also White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam). For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). And while a case directly on point is not required, "the clearly established law must be 'particularized' to the facts of the case." *White*, 137 S. Ct. at 552 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The particulars of the constitutional right that Siddique seeks to vindicate have been somewhat of a moving target during the life of this case. We start with a theory of the right advanced by Siddique throughout his briefing on appeal: it is clearly established that the Defendants violated the First Amendment when "they blocked Siddique's public employment because they disapproved of his statements on issues of public concern." *See Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (describing elements of a First Amendment retaliation claim for a government employee).

But Siddique did not pursue a public-employment theory of his case at summary judgment. Employment by the government is a necessary component of a claim of public-employment retaliation. *See id.* ("To make out a prima facie case of first amendment retaliation, *a public employee* must present evidence … .") (emphasis added). Yet Siddique marshalled no evidence at summary judgment to show that his student-government position should be considered employment. Indeed, Siddique's reliance on a public-employment theory of retaliation in the clearly established portion of his briefing is puzzling in light of the fact that Siddique later disavows the idea that he was an employee of the University. For example, he states that he "was not Defendants' employee" and asserts that "[s]tudent government is autonomous and independent, and student government positions are paid from student fees placed under *de jure* student control." As such, the cases of public-employment retaliation to which Siddique points in his briefing on appeal are inapposite to determining whether the Defendants' rejection of Siddique's application was a clearly established violation of the First Amendment.

Because the right to public employment free from retaliation is not at issue in this appeal, we turn our focus to the theory of the case on which the district court *did* pass: whether the Defendants violated the First Amendment when they rejected Siddique's application to the board. Siddique relies on a Wisconsin statute, and Wisconsin cases interpreting that statute, to show that federal law clearly established that the "Defendants were prohibited from blocking Siddique from a student government position." *See.* Wis. Stat. § 36.09(5);

*Student Ass'n of Univ. of Wis.–Milwaukee v. Baum*, 74 Wis. 2d 283, 287–88 (1976).[2]

Siddique's reliance on an alleged violation of state law as a *de facto* violation of federal constitutional law misses the mark. *See Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some [state] statutory or administrative provision."); *Frederickson*, 943 F.3d at 1057 (considering qualified immunity and framing the issue as whether a police officer "violated [the Plaintiff's] federal rights, not whether [the officer] was misinterpreting a state law"). A violation of state law, in and of itself, can be pertinent if federal law assigns it weight, or if we determined a departure from state law or policies should inform our constitutional analysis. But Siddique argued nothing of the sort. He does not point to a single federal case applying section 36.09(5) of the Wisconsin Statutes or *Baum* to adjudicate a First Amendment retaliation claim. And we have found no cases from our court or the Supreme Court addressing the bounds of First Amendment retaliation in the student-government context, much less in the factual context presented by Siddique.

In essence, Siddique depends on Wisconsin law to set the bounds for clearly established federal law. But that reliance is misguided. The question is not whether the Defendants were put on notice that their actions may have violated *state* law;

___

[2] Wisconsin law protects the rights of students to actively participate in student governance. *See* Wis. Stat. § 36.09(5). This statute allows students to organize themselves in "a manner they determine and to select their representatives to participate in institutional governance." *Id.*

the question is whether the Defendants' actions violated clearly established *federal* law. And on that score, the last word does not belong to state law or the Wisconsin Supreme Court; it belongs to federal law, or a decision of our court interpreting federal law, that would have put the Defendants on notice that their actions violated Siddique's constitutional rights. No such clearly established law exists.

As a backstop, Siddique relies on labor law "because of the obvious analogy between the legislative command for a company not to interfere with employees' organizing a union and selecting representatives, and the judicial command in *Baum* for a university not to interfere with students' organizing a government and electing representatives." But not one of the many labor cases on which Siddique relies involves an application of the First Amendment. We fail to see how these cases applying the National Labor Relations Act can indicate—much less clearly establish—that enforcement of an enrollment requirement on a student-government position amounts to unconstitutional First Amendment retaliation. It stretches credulity to assert that these cases put Defendants on notice that their actions toward Siddique violated his constitutional rights.

In the end, we are left without any analogous comparators applying First Amendment retaliation principles to student-government operations. As such, Siddique has not met his burden in coming forward with clearly established federal law that places "the statutory or constitutional question beyond debate." *Mullenix*, 136 S. Ct. at 308 (quoting *Ashcroft*, 563 at 741).

*B. Discretionary Functions*

We turn briefly to Siddique's other argument on appeal. Siddique contends there is a necessary predicate to our application of qualified immunity: defendants who wish to cloak themselves with the protection afforded by qualified immunity must first prove they were acting in a discretionary capacity. As support, he invokes this language from *Harlow*, 457 U.S. at 818: "government officials performing *discretionary* functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." He also relies on a recent case from the Eleventh Circuit. *See Estate of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 2746 (2019) ("[T]he official bears the initial burden of raising the defense of qualified immunity by proving that he was acting within his authority."). *But see Seiser v. City of Chicago*, 762 F.3d 647, 658–59 (7th Cir. 2014).

Whatever the merits of this argument, it was not presented below. Siddique's argument against summary judgment did not rest on a contention that the Defendants acted outside the scope of their authority. His summary-judgment briefing includes only one passing reference to "discretion" in the final sentence: "The intermeddling of the Defendants in the sovereign affairs of students exercising their right to organize themselves without interference was neither due to a gray area of law nor a reasonable exercise of discretion."

We've consistently held that a party forfeits an argument not raised before the district court. *Hildreth v. Butler*, 960 F.3d

420, 426 n.3 (7th Cir. 2020). Siddique's failure to raise this point below cripples our review. Scope-of-authority questions are inherently fact bound, and we cannot make an adequate determination about the scope of the Defendants' authority without a developed record.

We AFFIRM the judgment of the district court.