In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-1875

SHANE A. KITTERMAN,

*Plaintiff-Appellant,*

*v.*

CITY OF BELLEVILLE, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:19-cv-00051-GCS — **Gilbert C. Sison**, *Magistrate Judge.*

ARGUED OCTOBER 27, 2022 — DECIDED MAY 4, 2023

Before EASTERBROOK, RIPPLE, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge*. Shane Kitterman has been a frequent filer in both the federal and state courts of Illinois. His litigation campaign is in response to the insistence by Illinois authorities that he is required to register as a sex offender. Kitterman believes that this obligation has expired. He filed the present lawsuit in federal court, relying on 42 U.S.C. § 1983, against several defendants from the Belleville (Illinois) Police Department (BPD), the St. Clair County Sheriff's Department,

and the Illinois State Police (ISP). In it, he alleged that the authorities' continued enforcement of registration duties violated his constitutional rights.

The district court dismissed Kitterman's complaint for failure to state a claim. See FED. R. CIV. P. 12(b)(6). Because we find nothing in federal law that calls into question Kitterman's obligation to register as a sex offender under Illinois law, we agree with the district court that Kitterman's case is without merit. And Kitterman's federal lawsuit was doomed from the start, insofar as he thought he could prove federal constitutional violations by showing only that the state officials misapplied state law. We therefore affirm.

## I

In 2011 the Illinois General Assembly amended its Sex Offender Registration Act of 1996. Under the 2011 amendments,[1] anyone convicted of a felony after July 1, 2011, must register as a sex offender if that person was previously convicted of a sex offense or previously required to register as a sex offender. See 730 ILCS 150/3(c)(2.1). The post-2011 felony need not be a sex offense. Furthermore, the newly triggered registration requirements can be for life if the *previous* sex offense was serious enough. These amendments apply to people who were never required to register in the past, as well as those who already completed a period of required registration. *Id*.

---

[1] This set of amendments is also sometimes referred to as the 2012 amendments, in reference to the date of publication in the Illinois Compiled Statutes. We refer to them as the 2011 amendments throughout to make clear that the provisions took effect in 2011 and therefore felonies committed in 2011 are properly covered by the law.

On January 10, 1996, Kitterman pleaded guilty to aggravated criminal sexual abuse—a crime he committed in July 1995. See 720 ILCS 5/11-1.60. The resulting conviction carried with it a requirement that he register as a sex offender for ten years under an earlier version of the law known as the Child Sex Offender Registration Act (CSORA). See 1992 Ill. Laws 87-1064 (H.B. 2736); the ten-year registration requirement was codified at 730 ILCS 150/7 (1994). Kitterman's proceedings took place just as Illinois was transitioning to a new registration regime, renamed the Sex Offender Registration Act (SORA), 1995 Ill. Laws 89-8 (H.B. 204) (effective date Jan. 1, 1996), codified at 730 ILCS 150/1 *et seq.* (1996). Kitterman claims that, to address this transition, his guilty plea agreement arranged for his registration requirements to be governed by the previous law, CSORA. That alleged stipulation planted the seeds of the current litigation: Kitterman understood that the state was promising that his 1996 sex-offense conviction would *permanently* be exempted from SORA, including future amendments to the statute.

In 2005, Kitterman's original registration period was extended after he pleaded guilty to failure to register. See 730 ILCS 150/7 (requiring the Director of ISP to extend the registration period by ten years for failure to comply with SORA). Because he understands himself to be exempt from SORA, Kitterman believes that this was an unlawful extension of his registration duties. Kitterman next ran into registration problems after he was convicted of felony retail theft in late 2011. The relevant authorities (the ISP, which maintains Illinois's sex-offender database, as well as BPD and the St. Clair County Sheriff's Department) concluded that the 2011 conviction triggered a new lifetime registration requirement for Kitterman under SORA. Kitterman pushed back, again arguing that he

was exempt from any such requirement because of his plea deal.

In one way or the other, this dispute has been simmering ever since that 2011 conviction. Over those years, Kitterman has been arrested many times and convicted four times for failure to register. Through it all, Kitterman has fought his convictions and his registration duties. He filed repeated petitions (over 230 by his count) with the Supervisor of the ISP Sex Offender Registration Unit, Tracie Newton, requesting an administrative hearing to challenge his registration duties. Newton sent at least one letter in response, explaining to Kitterman why he is required to register. Kitterman also filed several federal and state lawsuits alleging that ISP and BPD are violating his constitutional rights by requiring his continued sex offender registration. None of Kitterman's efforts has been successful. He has not procured any relief in state court, and most of his federal lawsuits were dismissed because there was no way for him to proceed on a section 1983 claim without calling into question the validity of his state-court convictions for failure to register. In other words, his federal suits were *Heck*-barred. See *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) ("[I]n order to recover damages for [an] allegedly unconstitutional conviction …, a § 1983 plaintiff must prove that the conviction or sentence has been reversed ….").

Kitterman had a glimmer of hope, however, when in 2018, the Appellate Court of Illinois overturned his convictions for failure to register. See *People v. Kitterman*, 2018 IL App (5th) 140415-U. The court held that "to prove that the defendant unlawfully failed to register as a sex offender …, the State was required to present evidence that the defendant had a continuing duty to register on the date of the alleged offense." *Id*. at

¶ 24. The trial court had decided that Kitterman's "registration requirement was a collateral issue not within the jurisdiction of the court" and had therefore excluded evidence and argument about whether Kitterman was under such a continuing duty to register. *Id.* at ¶ 10. Because of this ruling, the state never introduced at trial any evidence that Kitterman's registration period had been extended to the present day. Against that backdrop, the appellate court reversed the convictions for failure to prove an element of the crime. *Id*. at ¶ 26.

Back in Belleville after his failure-to-register convictions were overturned, Kitterman alleges that he was "targeted" by the defendants and threatened with "immediate arrest and imprisonment" because he continued to contest his registration requirements. Kitterman asserts that BPD Officer Dan Collins was harassing and abusive in his efforts to force Kitterman to register as a sex offender. Kitterman filed complaints with BPD about this behavior; in the wake of those complaints, Kitterman says, Collins's harassment intensified.

This prompted Kitterman's present lawsuit against the City of Belleville, Collins, ISP, Newton, ISP Director Brendan Kelly, and several defendants associated with the St. Clair County Sheriff's Department. Kitterman asserts that the defendants' repeated efforts to force him to register have violated his First, Fifth, Eighth, and Fourteenth Amendment rights, as well as the Contracts Clause and the *Ex Post Facto* Clause of the federal Constitution. Kitterman also alleges injuries that occurred between 2005 and 2011 after his registration period was extended for the first time. Early in the case, the district court dismissed the suits against Newton and Kelly in their individual capacity for failure of service. The remaining defendants moved to dismiss Kitterman's case. The

district court held that none of Kitterman's constitutional theories changed the fact that the 2011 amendments to SORA and Kitterman's 2011 felony render him subject to a lifetime sex-offender registration requirement. The court thus dismissed all claims for failure to state a claim. See FED. R. CIV. P. 12(b)(6). Kitterman has appealed.

## II

There are two threshold questions we must address before turning to the details of Kitterman's appeal. We alluded to the first earlier: is this a case concerning solely the state officials' compliance with state law—for instance, their adherence to the terms of an Illinois plea agreement, or the scope of the registration requirement under different versions of Illinois law—or is this a case raising questions of federal law? Reading Kitterman's complaint, the primary dispute seems to be whether and how Illinois law should have applied to him. If that were all, then we could reject this appeal summarily: as we repeatedly have held, a party seeking to show a violation of federal law must demonstrate more than a failure to follow state law. See, *e.g.*, *Jones v. Cummings*, 998 F.3d 782, 788–89 (7th Cir. 2021); *Siddique v. Laliberte*, 972 F.3d 898, 904 (7th Cir. 2020); see also *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

But Kitterman's submissions do assert that the course of events he describes violated various federal constitutional provisions. We do not find these assertions to be so devoid of merit that "the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction" or that the "claim is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682–83 (1946). We therefore assess the theories that Kitterman

has presented, bearing in mind that a lack of merit does not mean that jurisdiction is lacking outside the extraordinary situations mentioned in *Bell v. Hood*.

The other threshold matter is how to treat Kitterman's contention that his 1996 plea deal gave him a wholesale exemption from SORA. This determination has important implications for the fate of Kitterman's remaining theories.

To support this argument, Kitterman attached several exhibits to his first amended complaint in the federal district court. This allows us "independently [to] examine the document and form [our] own conclusions as to the proper construction and meaning to be given the material." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) (quoting 5 Wright & Miller, *Federal Practice & Procedure* § 1327 (1990)). In doing so, we see no explicit promises about the future application of sex-offender registration duties. Exhibit Two is Kitterman's 1996 Conditions of Probation. It does indicate that his probation would require compliance with CSORA rather than with SORA. But nowhere do the conditions suggest that the agreement was conferring a permanent exemption from SORA or any other future registration law. Exhibit Three—the notification form that Kitterman signed—makes this plain. That form specifically states that it pertains to the "Sex Offender Registration Act," and thus it seems to contradict Kitterman's own account of his plea deal. Because the exhibits attached to Kitterman's complaint undermine his assertions, we need not accept as true the statement in the complaint that "he would not be subjected to the amendments of … SORA." Indeed, the interpretation of the agreement and the evaluation of its legal consequences strike us as issues of law that we are free to resolve.

Even if we do accept as true Kitterman's allegation that "Illinois … promised that the law governing the Plaintiff's duty to register as a sex offender … would remain the 'outdated' Child Sex Offender Registration Act," Kitterman has not given a plausible account of how the defendant state actors reneged on that agreement. Kitterman's current registration duties were triggered in 2011 when he committed additional crimes, not in 1996. Kitterman does not claim, nor do the attached exhibits indicate, that his 1996 plea deal purports to tie the state's hands with respect to any future crime. Therefore, requiring registration under SORA because of a 2011 conviction does not contradict any promises made to Kitterman that the CSORA would govern his 1996 conviction.

We also doubt that a state prosecutor has the power to make the promises that Kitterman describes. A state normally cannot be estopped from enforcing its own laws. See, *e.g.*, *Heckler v. Community Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 60–61 (1984) (explaining that "the Government may not be estopped on the same terms as any other litigant" because the "interest of the citizenry as a whole in obedience to the rule of law" almost always outweighs "the countervailing interest of citizens" requesting the estoppel). And in any event, Kitterman's pleadings do not suffice to overcome SORA's intentionally broad language. There is no indication that the statute creates any exceptions to its application. To the contrary, the 2011 amendments were explicitly crafted to bring offenders under the ambit of the current regulatory scheme, even where SORA had never applied to them. See 730 ILCS 150/3(c)(2.1) ("A sex offender or sexual predator, *who has never previously been required to register under this Act*, has a duty to register if the person has been convicted of any felony offense after July 1, 2011.") (emphasis added). Kitterman is no

different from all the other people convicted of a sex offense before 1996 who never expected to be governed by SORA, but who nonetheless now face registration requirements under the Act.

This analysis also dictates the outcome of Kitterman's alleged injuries from 2005 to 2011, following the original extension of his registration duties. First, those claims are presumably time-barred, given that any injury would have occurred several years before he initiated this lawsuit in 2019. Furthermore, the allegations in Kitterman's complaint relating to that earlier period still rest on the incorrect premise that he was permanently exempt from SORA, an argument that fails for the reasons we have discussed. In sum, the pleadings and the public record show that Kitterman has been under a lawful duty to register ever since his 1996 guilty plea.

### III

Turning to the substance of Kitterman's constitutional arguments, we consider *de novo* the district court's decision to dismiss the complaint under Rule 12(b)(6), "construing the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts and drawing reasonable inferences in the plaintiff's favor." *Levy v. West Coast Life Ins. Co.*, 44 F.4th 621, 626 (7th Cir. 2022) (quoting *Bilek v. Federal Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)).

Kitterman raises two sets of theories that warrant closer attention: those under the First Amendment, and those under the Eighth. His remaining counts, which allege violations of the Due Process, *Ex Post Facto* Clause, and Contracts Clause, are all foreclosed by Supreme Court and Seventh Circuit precedent.

A

Kitterman's First Amendment argument rests on his allegation that the defendants retaliated against him after he filed complaints with BPD. The complaint states that Collins, "act[ed] in furtherance of the policy, custom, and practice of the ISP … and BPD, to unlawfully force the Plaintiff to register as a sex offender." To do this, Collins "hunted the Plaintiff down in the streets"; "stormed the residence of the Plaintiff and attempted to batter down the door"; "stormed the place of employment of the Plaintiff's wife"; and told Kitterman "that [Collins] would make sure the new charges and the new convictions would stick this time." Kitterman argues that these facts are sufficient to establish retaliatory arrest and harassment in response to protected speech.

Whether an arrest amounts to retaliation in violation of the First Amendment is governed by *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019). We invited the parties to address whether an *attempted* arrest is subject to the *Nieves* framework, since many of Collins's efforts did not end in an arrest. They agreed that the *Nieves* analysis for retaliatory arrests applies with equal force to such attempts. We thus have no need to test the outer limits of *Nieves* here: like the parties, we will assume that it applies to both actual and attempted arrests.

Under *Nieves*, "a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Id*. at 1722 (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006)). Where the alleged injury is an arrest, "[t]he causal inquiry is complex." *Id.* at 1723. The Supreme Court has cautioned against probing the "subjective intent of the officers." *Id.* at 1724. Instead, a

plaintiff must allege that the arrest was objectively unreasonable by pleading the absence of probable cause. *Id*. at 1723–24.

Kitterman has not plausibly pleaded an absence of probable cause. The closest he comes is his allegation that Collins said that he (Collins) would make a new conviction "stick this time." Taking this statement in the light most favorable to Kitterman, we can infer that Collins knew that Kitterman's previous convictions for failure to register had been overturned. But Kitterman wants us also to infer from that statement that Collins should have known that Kitterman was no longer under a duty to register. The latter inference is not supported by the factual allegations in Kitterman's complaint.

As we already explained, Kitterman *is* under a duty to register under SORA based on his 2011 felony theft conviction. The fact that Kitterman's past failure-to-register convictions were vacated because of a failure of proof does not change this. Notably, ISP still lists Kitterman as someone in Collins's jurisdiction who is obligated to register, notwithstanding Collins's purported knowledge of Kitterman's overturned convictions. Kitterman offers no reason why Collins should have distrusted the ISP database. Collins therefore had probable cause to arrest Kitterman based on a failure to register. His attempts to effectuate that arrest, including the alleged visits to Kitterman's wife's workplace, are not retaliatory under the rule announced by *Nieves*. Kitterman included no other factual allegations that, if believed, would show that Collins's conduct was objectively unreasonable or that another defendant violated his First Amendment rights. Kitterman's First Amendment theory was thus properly dismissed.

B

With respect to the Eighth Amendment, Kitterman states that subjecting him to continued registration requirements "after the lawful punishment expired … constitutes cruel and unusual punishment." The district court dismissed this claim because "Kitterman's registration period was lawfully extended pursuant to his 2011 felony conviction." The district court also explained that mandated compliance with SORA is not punitive, citing the Supreme Court's decision in *Smith v. Doe*, 538 U.S. 84 (2003), which held that Alaska's substantially similar sex-offender registration requirements did not constitute punishment.

We too conclude that Kitterman's Eighth Amendment claims were properly dismissed. We do so, however, only on the first ground cited by the district court. We express no opinion on the question whether Illinois's SORA is punitive. We tread carefully on the latter point because intervening amendments to Illinois's SORA differentiate it from the sex-offender registration requirements that the Court considered in *Smith v. Doe*. Moreover, several state supreme courts and the Sixth Circuit have decided in the interim that the burdens of some sex-offender registration laws do constitute punishment. See, *e.g.*, *Does #1–5 v. Snyder*, 834 F.3d 696, 701–05 (6th Cir. 2016). Illinois's courts have not yet resolved whether its SORA is punitive. Compare *People v. Tetter*, 2018 IL App (3d) 150243, ¶ 69 (deciding that SORA's requirements are punitive) with *People v. Rodriguez*, 2019 IL App (1st) 151938-B, ¶ 30 (reaching the opposite conclusion). The Illinois Supreme Court has not spoken definitively on the matter. See *People v. Bingham*, 2018 IL 122008, ¶ 18 (avoiding the issue by deciding

that courts cannot consider the constitutionality of SORA on direct criminal appeal).

Kitterman's Eighth Amendment theory fails because he has not shown that registration requirements were imposed on him after the time for lawful punishment expired. Instead, additional registration requirements were triggered under Illinois law by Kitterman's 2011 felony conviction. Kitterman may feel frustrated by the imposition of a lifetime sex-offender registration duty triggered by a felony that had no sexual component. But that is what SORA mandates, and Kitterman has not offered any reason why (assuming it is punitive) it falls outside the wide boundaries of the Eighth Amendment. He offers no detail about the kind of punishment he is facing or how lifetime registration amounts to "excessive sanctions." See *Miller v. Alabama*, 567 U.S. 460, 469 (2012) (quoting *Roper v. Simmons*, 543 U.S. 551, 560 (2005)). We cannot ascertain any claim for relief under the Eighth Amendment.

## C

Kitterman also alleges that his due process rights under both the Fifth and Fourteenth Amendments were violated because defendants have failed to provide an adequate process for challenging registration requirements under SORA. But the Supreme Court has held that where sex offender registration requirements "turn on an offender's conviction alone," the underlying conviction proceedings ensure that the offender "already had a procedurally safeguarded opportunity to contest." *Connecticut Dep't of Public Safety v. Doe*, 538 U.S. 1, 7 (2003). Kitterman is not entitled to any additional process for challenging his registration duties. He had the chance to contest the underlying allegations in the criminal proceedings

for his 1996 sex offense and 2011 retail theft. Under *Doe*, that is enough.

We accept that the state must also "have a procedure in place to correct errors listed in the registry." *Murphy v. Rychlowski*, 868 F.3d 561, 567 (7th Cir. 2017). But ISP has such a system. Kitterman used it to file several letters with ISP, and he received a response from Newton explaining that there was no error and the registry requirements remained applicable to Kitterman. Kitterman obviously did not like that answer, but that does not mean that the state's procedures were inadequate. And to the extent that an alleged registry error puts Kitterman at risk of criminal prosecution for a new violation of an asserted duty to register, he would enjoy the full panoply of rights associated with a criminal trial in any such new case—rights under the federal Constitution, under Illinois's Constitution, and under state law. Those rights will adequately protect Kitterman's opportunity to argue that he should not have been subject to a registration requirement and thus should not be convicted of a crime for failing to do so. The Constitution requires no more, and so his due process contentions were properly dismissed.

D

Next we touch on Kitterman's *ex post facto* argument. He contends that the retroactive application of Illinois's 2011 SORA amendments to his 1996 conviction violated that constitutional provision. But this argument is foreclosed by our decision in *Johnson v. Madigan*, 880 F.3d 371 (7th Cir. 2018). There we held that the 2011 SORA amendments did not have a retroactive effect because the new registration requirements were triggered by a later felony and did not operate as an increased penalty for the old sex offense. *Id.* at 376. We likened

the lifetime registration requirement to habitual criminal sentencing enhancements: "a stiffened penalty for the latest crime" and not "new jeopardy or additional penalty for the earlier crimes." *Id*. (quoting *Gryger v. Burke*, 334 U.S. 728, 732 (1948)). Kitterman has not asked us to overturn *Johnson*, and we are not inclined to do so.

E

Finally, Kitterman alleges that SORA violates the Contracts Clause of the federal Constitution because it impairs the contractual agreement embodied in his 1996 plea deal. But, as we noted earlier, there is no indication that subjecting Kitterman to a lifetime registration requirement violates the terms of that agreement. Furthermore, even if there were an impairment in the contractual bargain, the "Contracts Clause restricts the power of *States* to disrupt contractual arrangements." *Sveen v. Melin*, 138 S. Ct. 1815, 1821 (2018) (emphasis added). As the district court held, the state of Illinois is not a party to this lawsuit. There are no named defendants that can enact or abrogate any SORA provisions and therefore there is no remedy available to Kitterman under the Contracts Clause.

**IV**

We AFFIRM the judgment of the district court.